[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#119)
The plaintiff, Pro-Fitness, Inc. (Pro-Fitness) filed a twelve-count, second revised complaint on July 6, 1995, against J. Robert Plankenhorn (Plankenhorn), Devrek Occupational Health Services, Inc. (Devrek), and Summex Corporation (Summex). The complaint arises from three agreements made between October, 1992 and January, 1993; the first two between Pro-Fitness and Devrek and the last among Pro-Fitness, Devrek, and several other entities to provide physical fitness and health services. Plankenhorn was president of Devrek, and Summex was originally a joint venture or partnership consisting of Pro-Fitness, Devrek, and several other entities, but was later incorporated.
Plaintiff alleges breach of contract, breach of fiduciary duty, tortious interference with contractual relation, interference with economic opportunity, accounting, violation of agreement not to compete, misappropriation of confidential information, and CUTPA.
Defendants move to strike the first, second, third, fifth, sixth, eighth, ninth, tenth, eleventh, and twelfth counts of the Second Revised Complaint, the prayer for attorneys' fees and punitive damages, [and to strike the entire complaint].
"The purpose of a motion to strike is to `contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Novametrix Medical Systems, Inc. v.BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Id., 215.
The defendants first argue that the breach of contract claims are improperly pled against nonparties to the contract. Counts one, two, and three allege breach of contract of the three agreements. Only parties to a contract may be held liable under the contract. CT Page 13478Ubysz v. DiPietro, 185 Conn. 47, 51, 440 A.2d 830 (1981). Summex was not a party to the three agreements. Summex cannot be liable to the contracts, and therefore, counts one, two, and three are stricken as to Summex.
The plaintiff argues that Plankenhorn is personally liable because each agreement contained a noncompetition or exclusivity clause that, in addition to the parties to the contract, included their respective, partners, employees, agents, principles or subcontractors. (Complaint, Exhibit A, ¶¶ 8 and 9; Exhibit B ¶ 5; Exhibit C ¶ 10.) "[A] fundamental attribute of the corporate form is that it shields the shareholders, directors and officers from personal liability." Campisano v. Nardi, 212 Conn. 282, 288,562 A.2d 1 (1989). If the language in the contract "when fairly interpreted, does not contain a personal undertaking or promise, [the agent] is not personally liable; for it is not his contract and the law will not force it upon him." Jacobs v. Williams,85 Conn. 215, 220, 82 A.2d 186 (1912). While Plankenhorn signed two of the agreements, he clearly signed in his representative capacity. The contracts contain no language that could be interpreted to contain a personal undertaking on the part of all partners, employees, agents, principles and subcontractors.
The plaintiff also asks the court to pierce the corporate veil. In order to pierce the corporate veil, "[t]here must be `such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." Zaistv. Olson, 154 Conn. 563, 574, 227 A.2d 552 (1967). The plaintiff has alleged that Plankenhorn was Devrek's chief executive officer and controlling influence (Complaint, ¶ 10) and that Plankenhorn and Devrek disavowed Devrek's obligations to Pro-Fitness under the agreements (Complaint, ¶ 30). Plaintiff has not alleged facts beyond mere influence. There is no discussion of the relationship between Devrek and Plankenhorn beyond the allegation that Plankenhorn influenced Devrek. The defendants' motion to strike the first, second, third, eighth, ninth and tenth counts is granted, as to Plankenhorn.
Defendant next claims that counts five and six must be stricken because the plaintiff has not alleged facts to satisfy the tortious requirement in a tortious interference with contract or business relationship claim. "For a plaintiff successfully to prosecute [tortious interference with business relations] it must prove that the defendant's conduct was in fact tortious. This CT Page 13479 element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." Blake v. Levy, 191 Conn. 257,261, 464 A.2d 52 (1983). "A claim is made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." Id., 262. Tortious interference with contractual relations requires a similar element of fraud or maliciousness. Solomon v. Aberman, 196 Conn. 359,365, 493 A.2d 193 (1985).
The plaintiff has alleged "at least some improper motive or improper means on the part of the defendants." Solomon v. Aberman, supra, 196 Conn. 365. Plaintiff, among other things, alleges that defendants diverted an economic opportunity and compensation belonging to plaintiff (Complaint, ¶ 31), and "conspired" to reduce and eliminate Pro-Fitness' rightful stake in the Summex Corporation. (Complaint, ¶ 32).
However, "parties to a contract cannot tortiously interfere with that contract, they can only breach it." Smith v. Brown, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 288536 (August 28, 1992, Lewis, J.). Furthermore, "[a]n officer or director of a corporation acting within the scope of his authority and on behalf of the corporation may not be held liable for interference with a contract of the corporation. . . . In order to deprive a corporate employee of his immunity, the plaintiff must establish that he acted solely for his own benefit and benefit to the corporation played no role therein." (Internal citations omitted) Resurrection Espinosa v. Connecticut College, Superior Court, judicial district of New London, Docket No. 522872 (June 27, 1994, Leuba, J.). The fifth count as to Devrek and Plankenhorn is stricken, because Devrek was a party to all three agreements, and the plaintiff has not alleged that Plankenhorn was acting solely for his own benefit. As to the sixth count, "[t]here is, of course, no material distinction between interference with contractual relations and interference with business with respect to the requirement that the tortious conduct be committed by a third party outside of the contractual relationship." D'Aquila v.Environmental Systems Products, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 455259 (November 18, 1993, Berger, J.). The motion to strike the fifth and sixth counts therefore is granted as to Devrek and Plankenhorn.
Defendants next claim that count eleven attempts to state a claim for misappropriation of confidential information and business CT Page 13480 opportunities. The common law claim for misappropriation of trade secrets has been superseded by the Uniform Trade Secrets Act. General Statutes § 35-50 et seq. Defendants' argue that plaintiff did not plead a violation of the statute, and therefore under Practice Book § 109A(a) the claim cannot be sustained. Plaintiff counters that it is not required to allege the statutory basis. Practice Book § 109A is directory rather than mandatory. Rowe v.Godou, 209 Conn. 273, 275, 550 A.2d 1069 (1988). The plaintiff has pled facts to state a claim for misappropriation of trade secrets, and therefore, the defendants' motion to strike count eleven is denied.
Defendants next claim that count twelve asserts a violation of the Connecticut Unfair Trade Practices Act (CUTPA). However, the complaint is deficient in that the complained of activities occurred among joint venturers or partners in a partnership, and were therefore not performed in trade, business, or commerce; that the trade or commerce was not performed in Connecticut; and that the complaint states a cause of action in breach of contract but does not allege facts to support its contention that the defendants' actions were immoral, unethical, unscrupulous or offensive to public policy.
"Superior Courts have taken the view that CUTPA does not apply to . . . the internal business affairs and workings of a partnership . . . or to participants in a joint venture." (Internal citations omitted.) Chila v. Chila, Superior Court, judicial district of Stamford, Docket No. 140570 (April 3, 1995, D'Andrea, J.). Plaintiff has alleged a misappropriation of a trade secret and misappropriation of clients and business opportunities. These claims go beyond the business relationship, and therefore state a cause of action under CUTPA. Sabo v. Automated Light Technologies,Inc., Superior Court, judicial district of Waterbury, Docket No. 110800 (May 5, 1993, Pittman, J.).
General Statutes § 42-110a(4) require that the trade or commerce be within the state. The plaintiff has not stated where the misappropriation occurred, nor where the tortious interference occurred. CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. WebPress Services Corp. v. New London Motors, Inc., 203 Conn. 342,354, 525 A.2d 57 (1987). "CUTPA was designed by the legislature to put Connecticut in the forefront of state consumer protection."Heslin v. Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510,515, 461 A.2d 938 (1983). Taking the allegations in the light CT Page 13481 most favorable to the plaintiff, plaintiff has stated that the agreements were signed in Connecticut, the defendants met and negotiated in Connecticut, and that the last agreement was not restricted in geographical scope. The plaintiff has alleged facts that the CUTPA violations were within the state.
The defendants' last claim, that facts were not alleged to constitute a CUTPA violation, is denied. "Conduct that might be actionable under CUTPA may not rise to a level sufficient to invoke tort liability. The reverse of that proposition, however, is seldom true. . . . it is difficult to conceive of a situation where tortious interference would be found but a CUTPA violation would not." Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747,756-7, 474 A.2d 780 (1984). Because defendants' motion to strike the CUTPA claim is not granted, the defendants' motion as to the prayer for attorneys' fees and punitive damages is also not be granted.
Lastly, defendants move to strike the entire complaint because it improperly joins claims. Defendants argue that the allegations do not affect all parties, and the claims are based on three separate agreements pertaining to separate subject matters. Practice Book § 133(7) authorizes joining of claims "whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject of action." "The term `transaction' is generally held to embrace and have reference to all the acts, or groups of related acts, which go to make up one entire project, system or deal, and includes the facts and circumstances out of which the injuries complained of arise."Hratko v. Bethel Board of Education, Superior Court, judicial district of Danbury, Docket No. 317836 (March 7, 1995, Leheny, J.);Goggins v. Fawcett, 145 Conn. 709, 710, 147 A.2d 187 (1958). The complaint states a litany of claims arising from actions by the same players and with the same subject matter — a relationship among companies forming an umbrella organization under which they will provide physical fitness and health services and equipment. Therefore the motion is denied as to misjoinder of claims.
KARAZIN, J. CT Page 13482